IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| INNOSPEC INC. and INNOSPEC FUEL SPECIALTIES LLC<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>AURORIUM HOLDINGS LLC,<br>AURORIUM DENHAM SPRINGS LLC<br>and AURORIUM LLC,<br><br>　　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)　C.A. No. 24-1371-RGA<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**REPORT AND RECOMMENDATION**

　　Presently before the Court is the motion of Defendants Aurorium Holdings LLC, Aurorium Denham Springs LLC and Aurorium LLC (collectively, "Defendants") to dismiss all counts of the First Amended Complaint. (D.I. 39). The Court carefully reviewed all submissions in connection with the motion (D.I. 40, 47, 48, 49 & 57), heard oral argument[1] and applied the following legal standards in reaching its recommended disposition:

**I.　　LEGAL STANDARD**

　　In ruling on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept all well-pleaded factual allegations in the complaint as true and view them in the light most favorable to the plaintiff. *See Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010); *see also Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232-33 (3d Cir. 2008). The Court is not, however, required to accept as true bald assertions, unsupported conclusions or unwarranted inferences. *See Mason v. Delaware (J.P. Court)*, C.A. No. 15-1191-LPS, 2018 WL 4404067, at *3 (D. Del. Sept. 17, 2018); *see also Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). Dismissal

---

[1]　　An official transcript of those proceedings will be docketed shortly.

under Rule 12(b)(6) is only appropriate if a complaint does not contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). This plausibility standard obligates a plaintiff to provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. Instead, the pleadings must provide sufficient factual allegations to allow the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (cleaned up).

## II. THE COURT'S RULING

The Court's Report and Recommendation was announced from the bench at the conclusion of the March 4, 2026 hearing as follows:

> At the outset, I must address the two exhibits Plaintiffs attached to their opposition brief, the declarations of Mr. Ian MacMillan and Mr. Susser. The declarations themselves and the exhibits attached to Mr. Susser's declaration contain facts that are not referenced in or integral to the First Amended Complaint. I will not consider the declarations or the exhibits to Mr. Susser's declaration because that is impermissibly going beyond the pleadings.[2] I may – but need not – consider the US Toll Manufacturing Agreement and the 2020 Amendment to that Agreement because those are expressly refenced in Paragraphs 55 to 57 of the Amended Complaint.[3] Even if I did consider those agreements, they would not materially affect my ruling on the pending motion.

---

2   *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) ("As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings."); *Hughes v. United Parcel Serv., Inc.*, 639 F. App'x 99, 104 (3d Cir. 2016) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." (cleaned up)).

3   *See In re Burlington Coat Factory*, 114 F.3d at 1426.

Moving on to the claims asserted here, Plaintiffs assert against three Aurorium defendants various claims of breach of contract, trade secret misappropriation, false advertising and replevin.

I will begin with Plaintiffs' breach of contract claims. Count I is for breach of the 2020 Supply Agreement and Count II is for breach of the 2020 Confidentiality Agreement. I recommend that these counts be dismissed as to Aurorium LLC and Aurorium Holdings. The parties to the Confidentiality Agreement are Plaintiff Innospec Fuel Specialties or IFS and Bercen Chemicals, LLC, who is now Defendant Aurorium Denham Springs. Only IFS and Denham Springs are parties to the Supply Agreement. Aurorium LLC and Aurorium Holdings are not parties to either agreement and thus cannot be liable for breach.[4] The most Plaintiffs offer is that Aurorium LLC was a party to an amendment to the Supply Agreement. But that doesn't necessarily render it plausible that Aurorium LLC was obligated to any confidentiality requirements under the original Supply Agreement. If Plaintiffs can allege facts that either Aurorium LLC or Aurorium Holdings were specifically and individually bound by the terms of the 2020 Confidentiality and Supply Agreements, they may seek leave to do so. But as it stands now, Counts I and II should be dismissed as to Aurorium LLC and Aurorium Holdings.

As for Denham Springs, however, I recommend granting in part and denying in part the motion. Starting with Count II, I recommend that the motion be denied. The 2020 Confidentiality Agreement defines "Confidential Information" to include "any trade secret or other information . . . necessary in connection with the Purpose."[5]

The definition goes on to provide that any "know-how, designs, reports, technical information and drawings, . . . formulations, chemical composition, processes, methods used to manufacture, inventions and ideas, relating to the Purpose" is considered "Confidential Information."[6]

The crux of the dispute here stems from the Confidentiality Agreement's goal, which is defined as the "Purpose." The "Purpose" section states that "Innospec believes it can improve its fuel additives by disclosing an additive and process conditions for

---

[4]   *O'Leary v. Telecom Res. Serv., LLC*, 2011 WL 379300, at *7 (Del. Super. Ct. Jan 14, 2011) ("It is basic contract law that only parties to a contract may be liable under that contract.").

[5]   (D.I. 31, Ex. B § 1).

[6]   (*Id.*).

3

use of that additive" in Denham Springs's manufacture of the intermediate chemical "and testing for specific performance requirements and wishes to disclose that information to" Denham Springs, and Denham Springs "may share information about its manufacturing process and/or the use of such additive."[7] Defendants argue that this "Purpose" is focused on improving Denham Springs's intermediate chemical additive.[8] Plaintiffs disagree, arguing that the "Purpose" is focused on improving their fuel additives such as their OLI 9000, the manufacturing process of which is the trade secret asserted here. Looking at the language itself, it is unclear whether the "additive" referenced in the "Purpose" section is distinct from IFS's "fuel additives" or if it is instead a separate chemical that improves Denham Springs's manufacture of its intermediate chemical. It is also unclear whether the "testing for specific performance requirements" in the "Purpose" section refers to the performance of IFS's fuel additives or to Denham Springs's intermediate chemical. If the testing is for performance of IFS's OLI 9000, then the manufacturing process of OLI 9000 – *i.e.*, the trade secret asserted here – would be related to the defined "Purpose." And in that case the 2020 Confidentiality Agreement would cover IFS's trade secret – or any confidential information relating thereto – and any improper use by Denham Springs would constitute a breach of contract.[9] These ambiguities cannot be resolved on a motion to dismiss.[10] Therefore, I recommend that the motion to dismiss Count II be denied as to Denham Springs.

But for Count I, I recommend that the motion to dismiss be granted. As Denham Springs correctly argues, the 2020 Supply Agreement does not provide separate confidentiality protections for Plaintiffs' trade secrets. Even assuming Plaintiffs' interpretation of the undefined term "Intellectual Property" is correct in that it includes confidential information, nothing in the agreement requires Denham Springs to protect the secrecy of such information. In the briefing, Plaintiffs only point to Sections 2.1, 2.2 and 9 as providing

---

[7]   (D.I. 31, Ex. B).

[8]   (D.I. 57 at 3).

[9]   (*See* D.I. 31, Ex. B §§ 1, 4, 5).

[10]  *See VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 615 (Del. 2003) ("Dismissal, pursuant to [Chancery Court] Rule 12(b)(6), is proper only if the defendants' interpretation is the only reasonable construction as a matter of law."); *see also Kahn v. Portnoy*, 2008 WL 5197164, at *3 (Del. Ch. Dec. 11, 2008) ("[A]ny ambiguity must be resolved in favor of the nonmoving party.").

4

confidentiality protections. But Section 9 only clarifies that the Supply Agreement does not supersede the Confidentiality Agreement; it does not separately impose confidentiality requirements.[11] Section 2.1 only grants Denham Springs and its affiliates a license to use anything deemed "Intellectual Property."[12] And Section 2.2 only requires Denham Springs to keep a list of people who are exposed to Plaintiffs' "Intellectual Property," provide that list upon request and to "remind departing employees who have had access to the Innospec Intellectual Property of their confidentiality obligations at [Denham Springs] takes with respect to its own confidential information."[13] That does not impose a confidentiality obligation – it imposes an obligation to remind. None of these impose a standalone confidentiality obligation, and Plaintiffs cannot sue for a breach of a provision that is not present in the agreement.[14] Count I alleges breach of confidentiality obligations under the Supply Agreement, and it should be dismissed. Although I have serious concerns about the impact of Section 8.1 of the Supply Agreement precluding any such causes of action based on confidentiality breaches, Plaintiffs may seek leave to amend if they believe doing so would not be futile.

I will next address the trade secret misappropriation claims in Counts III and IV. The asserted trade secret here is the manufacturing process of OLI 9000. Defendants seek dismissal on the basis that there is no written agreement protecting the confidentiality of Plaintiffs' trade secret.[15] But Plaintiffs' theory as pled is that each of Aurorium LLC, Aurorium Holdings and Denham Springs were under a duty of confidentiality to Plaintiffs and that each Defendant breached that duty by using Plaintiffs' trade secret to develop Texalene 7467.[16]

As to Denham Springs, Plaintiffs' claims may proceed. It is at least ambiguous whether the 2020 Confidentiality Agreement protects the confidentiality of Plaintiffs' trade secret in OLI 9000. To the

---

11   (*See* D.I. 31, Ex. A § 9).

12   (D.I. 31, Ex. A § 2.1).

13   (D.I. 31, Ex. A § 2.2).

14   *See, e.g.*, *Bush v. Triton Sys. of Del. Inc.*, C.A. No. 20-599-LPS, 2021 WL 6551617, at *5 (D. Del. Dec. 7, 2021).

15   (D.I. 40 at 12-15).

16   (*See* D.I. 30 ¶¶ 89, 158).

extent it is ambiguous, I must resolve that ambiguity in Plaintiffs' favor on a motion to dismiss.[17] As I discussed a few moments ago, Plaintiffs' interpretation of the Confidentiality Agreement would obligate Denham Springs to protect the secrecy of Plaintiffs' trade secret process. That is what Plaintiffs allege here. Plaintiffs allege that Denham Springs breached the obligations imposed by the Agreement by improperly using the OLI 9000 trade secret – which it learned about under the Agreement – to manufacture its Texalene 7467. In my view, Plaintiffs have adequately alleged that Denham Springs misappropriated Plaintiffs' trade secret given that Denham Springs had access to it and allegedly improperly used it to make their own Texalene product. To the extent that there are any arguments that Plaintiffs did not properly protect their trade secret, I find that that's not suitable for resolution on a motion to dismiss.[18] Therefore, I recommend that the motion be denied as to Denham Springs for Counts III and IV.

I reach the same conclusion as to Aurorium Holdings. Plaintiffs alleged that they disclosed the OLI 9000 trade secret process to all of the Aurorium Defendants.[19] And Plaintiffs also plausibly allege that Aurorium Holdings received access to the trade secret information from its affiliate company, Denham Springs. And Plaintiffs allege that Aurorium Holdings is the entity that markets the Texalene product and interfaces with customers about that product, thereby allegedly making use of that confidential information.[20] Therefore, I think that – although it may be close –

---

[17]  *See Eni Holdings, LLC v. KBR Grp. Holdings, LLC*, 2013 WL 6186326, at *6 (Del. Ch. Nov. 27, 2013) ("If, however, the contractual language is reasonably or fairly susceptible of different interpretations, I must resolve this ambiguity in favor of . . . the nonmoving party." (internal quotations omitted)); *see also In re Energy Future Holdings Corp.*, 585 B.R. 341, 348 (D. Del. 2018) (applying the same rule to a motion to dismiss a breach of contract claim governed by New York law).

[18]  *See, e.g.*, *JPMorgan Chase Bank, Nat'l Ass'n v. Argus Info. & Advisory Servs., Inc.*, 765 F. Supp. 3d 367, 375 (D. Del. 2025) (Bibas, J., sitting by designation); *see also Alpha Pro Tech, Inc. v. VWR Int'l LLC*, 984 F. Supp. 2d 425, 437 (E.D. Pa. 2013) ("The Court does not have the necessary factual array before it to determine . . . whether a plaintiff's efforts to maintain the secrecy of its alleged trade secrets were reasonable [and] is not a question susceptible of black-or-white analysis.").

[19]  (D.I. 30 ¶ 148).

[20]  (*See* D.I. 30 ¶¶ 92-95, 99-100).

Plaintiffs have adequately stated a claim of trade secret misappropriation for Aurorium Holdings.[21]

The claims against Aurorium LLC are different matter. Even if there were plausible allegations that Aurorium LLC received access to the trade secret information, I don't think that Plaintiffs have plausibly alleged – with sufficient factual support – what the LLC entity specifically may have done with the disclosed trade secret process thereafter. At best, Plaintiffs have pled facts to support an inference that an implied duty of confidentiality existed but I am unable to find any plausible allegations that Aurorium LLC did anything with that confidential information that would constitute trade secret misappropriation.

As to Plaintiffs' reliance on *Pixis* and the argument that they can group plead at this stage, I disagree that under the circumstances here, such pleading would satisfy the notice requirements of Rule 8.[22] Here, there are certain written agreements that obligate specific parties to keep some of Plaintiffs' information confidential. In my view, Plaintiffs cannot rely on the existence of some confidentiality agreement with some Aurorium entity and handwaving to assert that all of the named entities here had the same obligations. Or acted in the same improper way with respect to that information.[23]

In sum, I recommend that Defendants' motion to dismiss as to Counts III and IV be denied as to Denham Springs and Aurorium Holdings but granted as to Aurorium LLC.

Next are Plaintiffs' false advertising and unfair competition claims in Counts V, VI and VII. Each count is based on one or all Aurorium entities claiming exempt status of their Texalene 7467 product on their safety data sheet when that product is not actually exempt

---

[21] *See Oakwood Labs. LLC v. Thanoo*, 999 F.3d 892, 909 (3d Cir. 2021) ("[M]arketing goods that embody the trade secret . . . constitute[s] use." (cleaned up)).

[22] *See Pixis Drones, LLC v. Lumenier LLC*, C.A. No. 23-141-RGA, 2023 WL 6660991, at *3 (D. Del. Oct. 12, 2023) ("The proper question in examining whether Defendants have sufficient notice is whether 'it can be reasonably inferred that each and every allegation is made against each individual defendant.'" (quoting *Groove Digital, Inc. v. King.com, Ltd.*, C.A. No. 18-836-RGA, 2018 WL 6168615, at *1 (D. Del. Nov. 26, 2018)); *see also Zond, Inc. v. Fujitsu Semiconductor Ltd.*, 990 F. Supp. 2d 50, 53 (D. Mass. 2014).

[23] *Cf. IOENGINE, LLC v. PayPal Holdings, Inc.*, 2019 WL 330515, at *12 (D. Del. Jan. 25, 2019) (finding group pleading provided sufficient notice to parent corporations because the "collective liability" theory was based on an agency theory that was adequately pled).

within the meaning of the relevant EPA regulation. Defendants seek dismissal of these counts for failing to comply with the heightened pleading standard of Rule 9(b) and also because such false advertising claims are not legally cognizable. Because I agree with the latter point, I need not reach the open question in this Circuit of whether Rule 9(b) applies to the Lanham Act false advertising claims.

As to their prevailing theory, Defendants contend that Lanham Act claims can never be asserted if doing so would require the Court to review and apply an agency's regulation.[24] Not so. At least the First, Ninth and D.C. Circuits have held that literally false representations about compliance with an uninterpreted yet unambiguous regulation can be actionable.[25]

---

[24] (D.I. 40 at 18; D.I. 57 at 9).

[25] *See, e.g.*, *Dial A Car, Inc. v. Transp., Inc.*, 82 F.3d 484, 489 n.3 (D.C. Cir. 1996) ("[H]ypothetically speaking, a regulation might conceivably be drafted that would be so clear on its face that no good faith doubt concerning its interpretation would be possible, even without an explicit statement from the [agency]."); *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 731 (9th Cir. 1999) ("Absent a clear and unambiguous ruling from a court or agency of competent jurisdiction, statements by laypersons that purport to interpret the meaning of a statute or regulation are opinion statements."); *Azurity Pharm., Inc. v. Edge Pharma, LLC*, 45 F.4th 479, 496-98 (1st Cir. 2022); *TNT Amusements, Inc. v. Torch Elecs., LLC*, 2025 WL 2336858, at *3 (E.D. Mo. Aug. 13, 2025) ("[U]nder *Coastal Abstract* and *Dial A Car*, the standard is whether there exists clear and unambiguous legal guidance by the relevant authorities."); *Ameritox, Ltd. v. Millennium Labs., Inc.*, 889 F. Supp. 2d 1304, 1317 (M.D. Fla. 2012) ("Statements by laypersons that purport to interpret the meaning of a statute or regulation are opinion statements, and not statements of fact, unless 'a court or agency of competent jurisdiction' has clearly and unambiguously ruled on the matter." (quoting *Gen. Cigar Holdings, Inc. v. Altadis, S.A.*, 205 F. Supp. 2d, 1335, 1357 (S.D. Fla. 2002)); *Design Res., Inc. v. Leather Indus. of Am.*, 2014 WL 4159991, at *8 (M.D.N.C. Aug. 19, 2014) ("Adhering to [the *Dial A Car*] rule prevents 'transforming the Lanham Act into a handy device' allowing (or forcing) federal judges to interpret or decide questions of administrative law." (quoting *Dial A Car*, 82 F.3d at 489-90)); *Sierra Shelving, Inc. v. Design Assistance Constr. Sys., Inc.*, 2008 WL 11512375, at *6 (E.D. Va. May 13, 2008) ("[Plaintiff] would still be unable to hold [Defendant] liable for a Lanham Act violation because [the regulation] would still have been ambiguous at the time [Defendant] made the alleged misrepresentations." (citing *Dial A Car*, 82 F.3d at 488)); *Santana Prods., Inc. v. Bobrick Washroom Equip., Inc.*, 249 F. Supp. 2d 463, 533 (M.D. Pa. 2003) ("To determine the falsity of an opinion concerning code interpretation, therefore, there must be a clear and unambiguous statement from the authority having jurisdiction to interpret the code."), *vacated on other grounds*, 401 F.3d 123 (3d Cir. 2005); *see also Belcher Pharms., LLC v. Hospira, Inc.*, 1 F.4th 1374, 1380 (11th Cir. 2021) ("Lanham Act claims may be barred if their resolution requires an original determination that is committed to the [agency]."); *Sandoz Pharma. Corp. v. Richardson-*

8

Plaintiffs' Lanham Act claim here is based on the Polymer Exemption Regulation,[26] which the EPA promulgated under the Toxic Substances Control Act to excuse certain polymer manufacturers from the Act's pre-manufacture notice requirements.[27] A chemical substance is only exempted from those requirements if it meets the regulation's definition of "polymer," is not excluded from claiming the exemption, and meets one of the exemption criteria.[28] All requirements must be met. Although Plaintiffs focus on the molecular weight exemption criteria under subsection (e), more is required for exempt status under the regulation. Whether Defendants improperly claimed exempt status would also require me to determine whether Defendants' Texalene 7467 product is excluded from a claim of exemption under subsection (d). And one class of polymers excluded from the exemption – those that "substantially degrade, decompose, or depolymerize" – is not clearly defined. That class is defined using the term "substantially." Plaintiffs point to no prior EPA interpretation of that term, and the EPA has seemingly not interpreted that term during either the rulemaking process or in the guidance interpreting the exemption.[29] And I'll note that, in other

---

*Vicks, Inc.*, 902 F.2d 222, 230-32 (3d Cir. 2022) ("Sandoz's position would require us to usurp administrative agencies' responsibility for interpreting and enforcing potentially ambiguous regulations.").

[26] Plaintiffs argue that the Tenth Circuit's decision in *Cottrell, Ltd. v. Biotrol International, Inc.*, 191 F.3d 1248 (10th Cir. 1999), is analogous to their claim. (D.I. 47 at 17-19). The actionable claims in *Cottrell* were based on implied EPA approval and claims about the product's functionality. *Cottrell*, 191 F.3d at 1254. *Cottrell* is inapplicable. As Plaintiffs' brief makes clear, they allege that Defendants' "statement that Texalene 7467 is 'exempt' from EPA filing requirement is literally false." (D.I. 47 at 19). That allegation is more akin to the claim that the *Cottrell* court found *in*actionable because it required the court to "interpret and apply regulations." *Cottrell*, 191 F.3d at 1254.

[27] 40 C.F.R. § 723.250; *see also* 15 U.S.C. § 2604(a)(1), (h)(4).

[28] 40 C.F.R. § 723.250(b)-(e).

[29] *See* Env't Protection Agency, Polymer Exemption Guidance Manual § 4.2.3 (1997), https://www.epa.gov/sites/default/files/2015-03/documents/polyguid.pdf [https://perma.cc/QD9T-46QF]; Premanufacture Notification Exemptions; Revisions of Exemptions for Polymers; Final Rule, 60 Fed. Reg. 16316-16336 (Mar. 29, 1995) (codified at 40 C.F.R. pt. 723); Premanufacture Notification Exemptions; Revisions of Exemptions for Polymers; Proposed Rule, 58 Fed. Reg. 7679, 7682 (Feb. 8, 1993); Premanufacture Notification Exemptions; Exemptions for Polymers, 49 Fed. Reg. 46066, 46072-73 (Nov.

9

cases where courts are interpreting the use of "substantially" in statutes and regulations, they have found that that term is ambiguous when there are no guideposts.[30] Like here.

So Plaintiffs allege that Defendants don't meet the exemption requirements related to molecular weight for the Texalene product. That may be, but Defendants would have also had to interpret the exclusion provision to determine whether Texalene 7467 fell within the "substantially degrade, decompose, or depolymerize" language. That regulatory provision has not been interpreted before and, to me, is not clearly unambiguous. Because the regulation in issue is not clearly unambiguous or previously interpreted, statements about complying therewith cannot be literally false.[31] Any questions about compliance should stay with the EPA; to do otherwise would usurp the agency's authority.[32] As such, Defendants' statements about Texalene's exempt status are not actionable under the Lanham Act. And Plaintiffs' state law claims of false advertising and unfair competition, which are based on the same theory, are also not actionable.[33] I therefore recommend that Counts V through VII be dismissed and with prejudice.

---

    21, 1984); Premanufacture Notification; Receipt of Petition Requesting Commencement of Exemption Rulemaking Proceedings, 46 Fed. Reg. 54688, 54688-89 (Nov. 3, 1981).

[30] *See, e.g.*, *Montgomery Cnty. v. FCC*, 811 F.3d 121, 129 & n.5 (4th Cir. 2015) ("There is no question that ['substantially change the physical dimensions'] is ambiguous."); *Zurich Am. Ins. Grp. v. Duncan*, 889 F.3d 293, 302 (6th Cir. 2018) ("substantially similar" ambiguous); *Palmieri v. Nynex Long Distance Co.*, 437 F.3d 111, 115 (1st Cir. 2006) ("substantially controlled . . . contains some ambiguity"); *Ray v. Wilkie*, 31 Vet. App. 58, 69 (2019) ("substantially gainful occupation" ambiguous).

[31] *See Coastal Abstract*, 173 F.3d at 731 ("Absent a clear and unambiguous ruling from a court or agency of competent jurisdiction, statements by laypersons that purport to interpret the meaning of a statute or regulation are opinion statements, and not statements of fact. Statements of opinion are not generally actionable under the Lanham Act." (internal citations omitted)).

[32] *Sandoz Pharma.*, 902 F.2d at 230-32 ("Sandoz's position would require us to usurp administrative agencies' responsibility for interpreting and enforcing potentially ambiguous regulations.").

[33] *Inkit, Inc. v. Airslate, Inc.*, C.A. No. 23-793-RGA, 2025 WL 1016602, at *1 (D. Del. Mar. 27, 2025) ("Analogous violations of the DTPA are evaluated under the same standards as federal Lanham Act claims."); *see also* DEL. CODE ANN. tit. 6 § 2532(a)(5); *id.* § 2532(a)(12); UNIF. DECEPTIVE TRADE PRACTICES ACT § 2(a)(5) cmt. (A.B.A. 1966); *id.* § 2(a)(12) cmt.

> Finally, as to the replevin claim in Count VIII, based on Defendants' representations today, Plaintiffs agree that the claim is moot and it will be withdrawn.
>
> Plaintiffs attempted to request leave to amend in the event that I grant any of Defendants' motion.[34] But Plaintiffs failed to provide a draft proposed amended pleading, as is required for me to consider leave to amend in non-civil rights cases.[35] To the extent Plaintiffs want to seek leave to amend to cure deficiencies identified today, Plaintiffs may do so on or before March 25, 2026 using the proper procedure for doing so.
>
> That is my report and recommendation.

### III.   CONCLUSION

For the foregoing reasons, the Court recommends that Defendants' motion to dismiss (D.I. 39) be GRANTED-IN-PART and DENIED-IN-PART.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b)(1) and District of Delaware Local Rule 72.1. Any objections to the Report and Recommendation shall be limited to ten (10) pages and filed within fourteen (14) days after being served with a copy of this Report and Recommendation. *See* FED. R. CIV. P. 72(b)(2). Any responses to the objections shall be limited to ten (10) pages and filed within fourteen (14) days after the objections. The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the District Court. *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987).

---

[34]   (D.I. 47 at 20).

[35]   *LabMD, Inc. v. Boback*, 47 F.4th 164, 192 (3d Cir. 2022) ("[A] plaintiff must properly request leave to amend a complaint in order for the district court to consider whether to permit amendment. A plaintiff properly requests amendment by asking the district court for leave to amend and submitting a draft of the amended complaint, so that the court can judge whether amendment would be futile." (citation omitted)); *see also Fletcher-Harlee Corp v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252-53 (3d Cir. 2007) ("In non-civil rights cases, the settled rule is that properly requesting leave to amend a complaint requires submitting a draft amended complaint.").

The parties are directed to the court's "Standing Order for Objections Filed Under Fed. R. Civ. P. 72," dated March 7, 2022, a copy of which is available on the court's website, https://www.ded.uscourts.gov.

Dated: March 5, 2026

_____
UNITED STATES MAGISTRATE JUDGE