**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

INNOSPEC INC. and INNOSPEC FUEL
SPECIALTIES LLC,

       Plaintiffs,

    v.

AURORIUM HOLDINGS LLC,
AURORIUM DENHAM SPRINGS, LLC,
and AURORIUM, LLC,

       Defendants.

Civil Action No. 24-1371-RGA

<u>MEMORANDUM ORDER</u>

Plaintiffs Innospec and Innospec Fuel Specialties ("IFS") (collectively, "Plaintiffs") sued

Defendants Aurorium Holdings ("Holdings"), Aurorium Denham Springs ("Denham Springs"),

and Aurorium (collectively, "Defendants") for eight counts related to a 2020 Agreement between

the parties. (D.I. 30). Plaintiffs' claims included breach of contract for the 2020 Supply

Agreement (Count I), breach of contract for the 2020 Confidentiality Agreement (Count II),

violation of the Defend Trade Secrets Act (Count III), violation of the Delaware Uniform Trade

Secrets Act (Count IV), false advertising under the Lanham Act (Count V), unfair competition

under the Lanham Act (Count VI), false advertising under the Delaware Deceptive Trade Practices

Act (Count VII), and replevin (Count VIII). (*Id.* at 31–42). Defendants filed a motion to dismiss

all eight Counts of Plaintiffs' First Amended Complaint. (D.I. 39). The Magistrate Judge issued

a Report and Recommendation ("R&R") recommending that I:

1. Grant Defendants' motion to dismiss Count I with respect to all Defendants (D.I. 66 at

    3–5);

1

2. Grant Defendants' motion to dismiss Count II with respect to Aurorium and Holdings, and deny Defendants' motion to dismiss Count II with respect to Denham Springs (*id.* at 3–4);

3. Grant Defendants' motion to dismiss Counts III and IV with respect to Aurorium, and deny Defendants' motion to dismiss Counts III and IV with respect to Denham Springs and Holdings (*id.* at 5–7);

4. Grant Defendants' motion to dismiss Counts V, VI, and VII with respect to all Defendants (*id.* at 7–10); and

5. Dismiss Count VIII as moot (*id.* at 11).

Defendants filed an objection to the R&R's recommendation to partially deny the motion to dismiss Counts II, III, and IV.. (D.I. 68). Defendants argue that the R&R's recommendation on these Counts rests on the improper understanding that the word "additive," as used in the underlying 2020 Confidentiality Agreement, could be ambiguous and could refer to a fuel additive. (*Id.* at 6–8). Defendants argue that Counts II, III, and IV should be dismissed as to all Defendants because "additive" is not ambiguous and could not refer to a fuel additive. (*Id.* at 8–10). Plaintiffs filed a Response to Defendants' Objection. (D.I. 70).

The Objection is overruled. Defendants' Motion to Dismiss is granted in part and denied in part.

I.      **Legal Standard**

Any objections to the legal determinations in the R&R must be reviewed de novo. FED. R. CIV. P. 72(b)(3). "Under Delaware law, the proper interpretation of language in a contract is a question of law. Accordingly, a motion to dismiss is a proper framework for determining the meaning of contract language." *Allied Cap. Corp. v. G.C.-Sun Holdings, L.P.*, 910 A.2d 1020,

2

1030 (Del. Ch. 2006).[1] However, "[d]ismissal, pursuant to Rule 12(b)(6), is proper only if the defendants' interpretation is the *only* reasonable construction as a matter of law." *VLIW Tech., L.L.C., v. Hewlett-Packard Co.*, 840 A.2d 606, 615 (Del. 2003). "A contract is not rendered ambiguous simply because the parties do not agree upon its proper construction. Rather, a contract is ambiguous only when the provisions in controversy are reasonably or fairly susceptible of different interpretations or may have two or more different meanings." *Rhone-Poulenc Basic Chems. Co. v. Am. Motorists Ins. Co.*, 616 A.2d 1192, 1196 (Del. 1992).

If the contract is unambiguous, the Court then looks to whether the complaint has set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When reviewing a Rule 12(b)(6) motion, "accept as true all allegations in the complaint and all reasonable inferences that can be drawn from them after construing them in the light most favorable to the non-movant." *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994).

## II.    Contract Interpretation

The parties dispute the meaning of the term "additive" in the 2020 Confidentiality Agreement. The "Purpose" clause of the 2020 Confidentiality Agreement begins by stating: "Innospec believes it can improve its fuel additives by disclosing an additive and process conditions for the use of that additive in [Denham Springs'] manufacture of alkenyl succinic

---

[1] In this Memorandum Order, I cite Delaware cases for support of various propositions relating to the application of federal law relating to motions to dismiss. I recognize that federal law controls such procedural issues. I do not think there is any difference between federal and Delaware law on these procedural issues in the context of this case. Substantive contract law is a matter of Delaware law.

3

anhydrides" ("ASAs"). (D.I. 6, Ex. B at 2). The Purpose clause then explains that Denham Springs "may share information about its manufacturing process and/or the use of such additive." (*Id.*). The only other time the Agreement uses any form of the word "additive" is when the Agreement states, "Innospec is in the business of making fuel additives." (*Id.*).

Defendants argue that "additive" can only mean a non-fuel additive, such as its product OLI 9000. (D.I. 68 at 6). Defendants assert that, when reading the clause in the context of the overall contract, the Purpose clause should be understood as: "Innospec believes it can improve its fuel additives by disclosing an ASA additive and process conditions for the use of that ASA additive in [Denham Springs'] manufacture of alkenyl succinic anhydrides . . . and [Denham Springs] may share information about its manufacturing process and/or the use of such ASA additive." (*Id.* at 7). Plaintiffs respond by arguing that the Agreement does not limit "additive" to any particular chemical. (D.I. 70 at 6). Instead, Plaintiffs argue it does not matter what counts as an additive under the Purpose clause because the Agreement is intended to facilitate sharing of information broadly "related to the Purpose," as stated in the "Definition of Confidential Information" clause. (*Id.* (citing D.I. 6, Ex. B at 2)).

"When interpreting contracts, we construe them as a whole and give effect to every provision if it is reasonably possible. A meaning inferred from a particular provision cannot control the agreement if that inference conflicts with the agreement's overall scheme." *Norton v. K-Sea Transp. Partners L.P.*, 67 A.3d 354, 360 (Del. 2013). "[T]he role of a court is to effectuate the parties' intent. In doing so, we are constrained by a combination of the parties' words and the plain meaning of those words where no special meaning is intended." *Lorillard Tobacco Co. v. Am. Legacy Found.*, 903 A.2d 728, 739 (Del. 2006).

4

To reach Defendants' conclusion, the reader must have additional background information on how the parties and products interact throughout the manufacturing process. While the parties likely knew the intended relationship of the fuel additives and ASAs, "the Court will give priority to the parties' intentions as reflected in the four corners of the agreement." *GMG Cap. Invs., LLC v. Athenian Venture Partners I, L.P.*, 36 A.3d 776, 779 (Del. 2012). The Agreement only explains that Innospec makes fuel additives, Denham Springs makes ASAs, and some form of additive may be used to manufacture the ASAs. Nothing in the Agreement specifies that Innospec uses Denham Springs' ASAs to make its fuel additive; to the contrary, a reader may understand the Agreement to imply that Denham Springs uses Innospec's fuel additives to make its ASAs. This would make it reasonable that the purpose of the Agreement is described as allowing Innospec to disclose a new "fuel additive," which it then refers to as simply "additive," for Denham Springs to use in the process of making ASAs.

If I knew that Denham Springs historically makes the ASAs that Innospec historically uses to make fuel additives,[2] plausibly making Defendant' interpretation more reasonable, there would still be no guarantee the parties intended to maintain the same relationship here. "[O]n a Rule 12(b)(6) motion it [is] error to select the 'more reasonable' interpretation as legally controlling." *Appriva Shareholder Litigation Co., LLC v. EV3, Inc.*, 937 A.2d 1275, 1292 (Del. 2007). Similarly, I cannot look to outside evidence on how ASAs and fuel additives are manufactured because this type of evidence goes beyond the type of "simple facts" from which I can determine the meaning of the contract. *Rhone-Poulenc*, 616 A.2d at 1196 (quoting *Holland v. Hannan*, 456 A.2d 807, 815 (D.C. App. 1983)). This type of ambiguity rests on factual questions reserved for

---

[2] Defendants assert that this is so. (D.I. 68 at 2, 9).

the jury. *Fried v. AdaptHealth, LLC*, 2025 WL 1135203, at *2 (D. Del. Apr. 17, 2025) (quoting *Ram Constr. Co. v. Am. States Ins. Co.*, 749 F.2d 1049, 1052 (3d Cir. 1984)).

Thus, as the term "additive" is reasonably susceptible to more than one meaning, it cannot be interpreted on a motion to dismiss. *See VLIW Tech.*, 840 A.2d at 615.

### III.    Motion to Dismiss

"Because the provisions at issue in the Agreement are susceptible to more than one reasonable interpretation, for purposes of deciding a motion to dismiss, their meaning must be construed in the light most favorable to the non-moving party." *VLIW Tech.*, 840 A.2d at 615. Plaintiffs, as the non-moving party, argue that the meaning of "additive" is ambiguous and may include "fuel additives." (D.I. 70 at 6).

### A. Count II: Breach of 2020 Confidentiality Agreement

Plaintiffs allege that Defendants breached the 2020 Confidentiality Agreement by improperly using information covered by the Agreement to manufacture products for themselves. (D.I. 30 at 32–33). Defendants move to dismiss the breach of contract claim because, they argue, the Agreement does not apply to information related to the OLI 9000 product. (D.I. 40 at 7).

The Agreement allows for the parties to share confidential information, defined in relevant part as "any trade secret or other information or data . . . necessary in connection with the Purpose." (D.I. 6, Ex. B at 2). The Purpose clause, as addressed above, covers the sharing of information related to an additive to improve the manufacturing of ASAs. (*Id.*). As "additive" is ambiguous and must be construed in favor of the non-moving party at the motion to dismiss stage, "additive" includes "fuel additives."

There is no dispute that the OLI 9000 product is a fuel additive. (D.I. 68 at 2; D.I. 70 at 2). The Agreement prohibited the disclosure of information on any "additive," and (for purposes

of this motion) "additive" includes the OLI 9000 product. However, Defendants argue that, even if OLI 9000 could be considered an "additive," Plaintiffs have failed to assert how the OLI 9000 manufacturing process is related to the development of an improved ASA. (D.I. 68 at 9). To make this argument, Defendants provide an analogy: "Chocolate chips are used in the recipe for chocolate chip cookies and not the other way around. A recipe for making chocolate chips can be improved without reference to a recipe for making chocolate chip cookies." (*Id.*). Likewise, Defendants argue that the manufacturing process of OLI 9000 (the final product, like cookies) has no relevance to the improvement of ASAs (an ingredient in the final product, like the chocolate chips). (*Id.*). However, Defendants' analogy supports the opposite conclusion. Someone attempting to improve chocolate chips that are intended to be used to make cookies has a direct interest in understanding how the cookies are made. For example, the baking process used in certain cookie recipes may require the chocolate chips to be a certain size to prevent the chocolate from melting or scorching. Or, if a new coating is added to the chocolate chips, it may be necessary to know the complete ingredients and steps of the intended cookie recipe to determine if the new coating will interfere with the rising agents used in the cookie. The manufacturing of OLI 9000 is relevant for the improvement of ASAs that are to be used in OLI 9000 for similar reasons. This relevance is one that does not require elaborate explanation at the pleading stage. Thus, Plaintiffs have properly alleged that Defendant Denham Springs misused confidential information regarding the OLI 9000 product. Defendants' motion is denied.

### B. Counts III and IV: Violation of Federal and State Trade Secrets Laws

Defendants move to dismiss Counts III and IV of the Complaint—violation of federal and state trade secrets laws, respectively—because OLI 9000 falls outside of the protections of the 2020 Confidentiality Agreement. (D.I. 40 at 13). Defendants advance the same arguments that

7

"fuel additive" is not covered by the 2020 Confidentiality agreement and, even if it were, Plaintiffs have not adequately plead that the manufacturing process of OLI 9000 was "necessary in connection with" Defendants' development of an improved ASA. (D.I. 68 at 9–10; *see* D.I. 6, Ex. B at 2).

For the same reasons as addressed above with regard to Defendants' motion to dismiss, I find that Plaintiffs have meet their burden of pleading (1) the OLI 9000 manufacturing process was secret, (2) the 2020 Confidentiality Agreement was intended to protect the secrecy of information shared under it, and (3) viewing the 2020 Agreement in the light most favorable to Plaintiffs, the 2020 Agreement applied to information about the manufacturing process of OLI 9000. Defendants are not challenging the other elements of the trade secret actions. (*See* D.I. 68 at 8–10). Thus, Defendants' motion to dismiss the federal and state trade secret claim against Defendants Denham Springs and Holdings is denied.

The Objections to the R&R (D.I. 68) are OVERRULED. The R&R (D.I. 66) is ADOPTED. Defendants' Motion to Dismiss (D.I. 39) is GRANTED in part and DENIED in part, as specified in the R&R.

IT IS SO ORDERED.

Entered this 16th day of June, 2026

_____
United States District Judge

8